**David C. Lewis**, OSB No. 953348
E-mail: dlewis@cisoregon.org
**Lauren E. Nweze**, OSB No. 145218
E-mail: lnweze@cisoregon.org
**CIS LITIGATION**
15875 Boones Ferry Road, #1469
Lake Oswego, OR 97035
Telephone: (503)763-3800
Facsimile: (503) 763-3900

Of Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MICHAEL AUSTIN RELLOQUE, IV**, <br><br>　　　　Plaintiff, <br><br>　v. <br><br>**CITY OF WEST LINN, MATTHEW GOODE, DANA GUNNARSON, TODD GRADWAHL**, <br><br>　　　　Defendants. | No. 3:22-cv-01781-SI <br><br> **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> <u>**ORAL ARGUMENT REQUESTED**</u> |

# TABLE OF CONTENTS

LR 7-1 CERTIFICATION ................................................................................................ 1

MOTION.......................................................................................................................... 1

LEGAL MEMORANDUM ............................................................................................. 1

I.     INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF MATERIAL FACTS................................................................ 2

III.   SUMMARY JUDGMENT STANDARD................................................................ 5

IV.    ARGUMENT .......................................................................................................... 6

    A.   City Defendants Are Entitled to Summary Judgment on Plaintiff's Section 1983
        Claims ............................................................................................................ 6

        1.   Matthew Goode, Dana Gunnarson, and Todd Gradwahl's Conduct Does Not
            Constitute a Violation of the Fourteenth Amendment ........................... 7

            i.   First Claim for Relief - State Created Danger ................................ 7

            ii.  Second Claim for Relief – Equal Protection................................... 10

        2.   Matthew Goode, Dana Gunnarson, and Todd Gradwahl Are Entitled to Qualified
            Immunity................................................................................................. 12

    B.   City Defendants Are Entitled to Summary Judgment on Plaintiff's State Tort Claims 14

        1.   Negligence Claim.................................................................................... 15

        2.   Intentional Infliction of Emotional Distress Claim............................... 18

CONCLUSION................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986) .................................................. 6

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ........................................................... 12, 13

*Bahn v. NME Hosp's, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), *cert. denied*, 502 U.S. 994 (1991) .................................................................................................................... 6

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) .................................................. 10

*Bingham v. City of Manhattan Beach*, 341 F.3d 939 (9th Cir. 2003) ........................... 10

*Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006) ......................................................... 9

*Buchler v. State By & Through Oregon Corp. Div.*, 316 Or. 499 (1993) ..................... 17

*California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.*, 818 F.2d 1466 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988) ..................................................... 6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 6

*Chase v. Cty. of Nevada*, 81 F. App'x 92, 93 (9th Cir. 2003) ....................................... 8

*City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765 (2015) ............. 12

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) ................................................................................................. 10

*Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010) ........................... 9

*Corgan v. Keema*, 765 F. App'x 228 (9th Cir. 2019) ................................................... 9

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989) ..................... 7

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ................................................ 12

*FDIC v. Henderson*, 940 F.2d 465 (9th Cir. 1991) ..................................................... 11

*Felarca v. Birgeneau*, 891 F.3d 809 (9th Cir. 2018) ................................................... 12

*Fraker v. Benton County Sheriff's Office*, 214 Or. App. 473, 490 (2007) ................... 15

*Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or. 434 (1988) ...................................... 15, 16

*Gagic v. Cnty. of Maricopa*, 2021 U.S. App. LEXIS 37923 (9th Cir. 2021) ................ 11

*Graham v. Multnomah County*, 158 Or. App. 106 (1999) ........................................... 16

*Hall v. May Dept. Stores Co.*, 292 Or. 131, 637 P.2d 126 (1981) ............................... 18

*Hammond v. Central Lance Communications Center*, 312 Or. 17, 816 P.2d 593 (1991) ............ 16

*Harris v. UBH of Oregon, LLC*, No. 3:17-CV-01296-AA, 2017 WL 4182816 (D. Or. Sept. 21, 2017) ................................................................................................... 18

*Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012) ....................................................... 8

*Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2019) .............. 13

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

*House v. Hicks*, 218 Or. App. 348, 179 P.3d 730 (2008) ............................................................ 18

*Hyun Ju Park v. City & Cty. of Honolulu*, 952 F.3d 1136 (9th Cir. 2020) ...................................... 7

*J.P. by & through Villanueva v. Cty. of Alameda*, 803 F. App'x 106 (9th Cir. 2020) .................... 8

*Joshi v. Providence Health System of Oregon Corp.*, 198 Or. App. 535 (2005),
    *aff'd*, 342 Or. 152 (2006) ......................................................................................................... 15

*Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227 (9th Cir. 1994) ............................................ 11

*Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) ..................................................... 8

*Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001) ............................ 11

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018)................................................................................... 12

*L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996) ............................................................................... 7

*Lawrence v. United States*, 340 F.3d 952 (9th Cir. 2003) ............................................................ 9

*Marsh v. Cty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012)....................................................... 12

*Martinez v. City of Clovis*, 943 F.3d 1260 (9th Cir. 2019) ........................................................ 8-9

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574 (1986)........ 6

*Maynard v. City of San Jose*, 37 F.3d 1396 (9th Cir. 1994) ....................................................... 11

*Morgan v. Gonzales*, 495 F.3d 1084 (9th Cir. 2007).................................................................... 7

*Mullenix v. Luna*, 577 U.S. 7 (2015)................................................................................... 12, 13

*Nimer v. Broek*, 2024 U.S. App. LEXIS 12081 (9th Cir., 2024) ................................................ 11

*Park v. Hoffard*, 315 Or. 624 (1993) ......................................................................................... 17

*Patel v. Kent Sch. Dist.*, 648 F.3d 965 (9th Cir. 2011) ................................................................. 7

*Patton v. J.C. Penney Co., Inc.*, 301 Or. 117, 719 P.2d 854 (1986)............................................ 18

*Paul v. Providence Health Sys.-Oregon*, 351 Or. 587, 273 P.3d 106 (2012) ....................... 16, 17

*Pearson v. Callahan*, 555 U.S. 223 (2009).................................................................................. 12

*Pickens v. U.S.*, 750 F.Supp.2d 1243 (D. Or. 2010) ................................................................... 16

*Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).......................................... 10

*Reichle v. Howards*, 566 U.S. 658 (2012) .................................................................................. 12

*Sampson v. County of Los Angeles*, 974 F.3d 1012 (9th Cir. 2020) ............................................ 10

*Sandoval v. Cty. of San Diego*, 985 F.3d 657 (9th Cir. 2021) ..................................................... 13

*Schuler v. Chronicle Broad Co.*, 793 F.2d 1010 (9th Cir. 1986).................................................. 6

*Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017)..................................... 12, 13

*Sharp v. Cty. of Orange*, 871 F.3d 901 (9th Cir. 2017) .............................................................. 13

*Simpson v. Sisters of Charity of Providence in Oregon*, 284 Or. 547 (1978).............................. 15

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

*Solberg v. Johnson*, 306 Or. 484 (1988) ............................................................... 15

*Son v. Ashland Community Healthcare Services*, 239 Or. App. 495 (2010) ............................... 15

*Sorrels v. McKee*, 290 F.3d 965 (9th Cir. 2002) ........................................................ 12

*Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833 (9th Cir. 2010) ................................. 8

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) .......................................................... 6

*Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) .......................................... 12

*United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539
    (9th Cir. 1989), *cert. denied*, 493 U.S. 809 (1989) ............................................... 6

*Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) ........................................... 12

*Warren v. City of Carlsbad*, 58 F.3d 439 (9th Cir. 1995) ............................................... 10

*Watte v. Edgar Maeyens,* 828 P.2d 479 (Or. Ct. App. 1992) ............................................. 18

*West v. Atkins*, 487 U.S. 42, 48 (1988) ................................................................ 7

*Wilson v. Layne*, 526 U.S. 603 (1999) ................................................................. 13

*Woolston v. Wells*, 297 Or. 548 (1984) ................................................................ 16

**Other Authorities**

David Pruessner, *The Forgotten Foundation of State-Created Danger Claims,*
    20 REV. LIT. 357, 357 (2001) ...................................................................... 9

**Rules**

Fed. R. Civ. P. 56(e) ................................................................................... 6

**Treatises**

Restatement (Third) of Torts: Phys. & Emot. Harm § 40 (2012) ........................................... 17

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

**LR 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1(a), the undersigned counsel for Defendants City of West Linn, Matthew Goode, Dana Gunnarson and Todd Gradwahl ("Defendants") certifies that counsel has conferred with Plaintiff's attorney, Beth Creighton, and made a good faith effort to resolve the matters that are the subject of this motion for summary judgment but were unable to do so.

**MOTION**

Pursuant to Fed. R. Civ. P. 56 and Local Rules 56-1, County Defendants move the Court for an order granting summary judgment on all of Plaintiff's claims for relief because there is no genuine issue of material fact and Defendants are entitled to summary judgment as a matter of law. In addition, individual defendants Matthew Goode, Dana Gunnarson, and Todd Gradwahl are entitled to qualified immunity on Plaintiff's federal claims against them.

In support of this motion, pursuant to LR 7-1(c), County Defendants rely on the Legal Memorandum set forth below, the Declaration of Lauren E. Nweze with attached exhibits, and the pleadings on file herein.

**LEGAL MEMORANDUM**

**I.    INTRODUCTION.**

On November 14, 2020, Defendants were called out to Plaintiff's residence for a behavioral health incident report. After spending considerable time and effort attempting to locate or contact Plaintiff, and being unable to do so, Defendants determined there was insufficient factual or legal grounds to enter Plaintiff's residence without his knowledge or permission and cleared the call. Plaintiff now brings numerous claims against Defendants, first a Section 1983 claim alleging Fourteenth Amendment state created danger and equal protection violations, second, a state negligence and intentional infliction of emotional distress claims.

The Defendants now bring this motion for summary judgment as the allegations underlying these claims asserted in Plaintiff's Complaint are either unsupported by the facts, or

do not state claims as a matter of law. As such, Defendants are entitled to summary judgment as a matter of law as to each of Plaintiff's claims.

## II.    STATEMENT OF MATERIAL FACTS.

Just after midnight on November 14, 2020, West Linn Police officers were dispatched to a call of a "behavioral health incident" at a residence which was later determined to be rented by Plaintiff along with two female roommates.  (Nweze Decl., Ex. 1)  One of the roommates, Melissa Birdwell, had called 911 at 12:09 a.m. and reported that Plaintiff was acting "crazy," had come into her room naked shouting that he was "God," was likely high on mushrooms, potentially had a burn on his arm, smelled "bad", maybe like burnt skin, and had other "markings" on his body (which she did not describe as burns or injuries).  (Nweze Decl., Ex. 2.) Ms. Birdwell indicated that Plaintiff acknowledged and responded to her statements to him that he "snap out of it" and leave her room.  (*Id.*)  Ms. Birdwell did not describe Plaintiff making any request for medical assistance, did not indicate Plaintiff made statements or acted in a manner suggesting he was in need of immediate assistance or medical care, nor did Ms. Birdwell describe Plaintiff as acting in a manner indicating he was experiencing any pain or distress.  (*Id.*) Ms. Birdwell indicated no one else was in the residence and at the time of the call she believed Plaintiff was now upstairs in his room or bathroom but wasn't certain.  (*Id.*)  Ms. Birdwell did not provide any other physical description of Plaintiff, nor did she state Plaintiff's race, ethnicity, or cultural background.  (*Id.*)  Officers Goode, Gunnarson, and Sergeant Gradwahl responded to the dispatch call, and all arrived on the scene within ten minutes of the call being made (and all within a few minutes of each other).  (Nweze Decl., Ex. 1.)  Dispatch also requested that medical stage in the event assistance was required.  (Nweze Decl., Exs. 1 and 2.)

Once at the residence, the three officers encountered Ms. Birdwell, who had left the residence at that point and was in front of the home.  (Nweze Decl., Ex. 3, p. 1; Ex. 4, p. 1.) Upon contact, Ms. Birdwell mostly reiterated what she had just told dispatch, but added that Plaintiff appeared to have ash or dirt on his chest and arms and that he may have had a burn or blood on one of his arms.  (Nweze Decl., Ex. 3, p. 1; Ex. 4, p. 1; Ex. 5, p. 84:4-12; Ex. 6, p.

46:17 – 49:9; Ex. 7, p. 30:6-25.)  Ms. Birdwell also informed the officers that Plaintiff had

ingested mushrooms that evening and was acting in a way she had never seen him act before.

(Nweze Decl., Ex. 4, p. 1.)  Ms. Birdwell also stated she smelled a "burnt smell," but was not

able to clarify exactly what Plaintiff's physical condition was.  (Nweze Decl., Ex. 4, p. 1; Ex. 6,

p. 72:6-25.)  Based upon this information, the officers believed that Plaintiff was likely under the

influence of mushrooms and potentially had a smaller single burn injury on one arm.  (Nweze

Decl., Ex. 5, p. 160:18-25; Ex. 6, p. 60:17 – 61:23; Ex. 7, p. 49:20 – 50:25, p. 96:1-9.)

Ms. Birdwell did not provide Plaintiff's race, ethnicity, or any other demographic information

about Plaintiff, or any other physical description other than he was naked.  (Nweze Decl., Ex. 6,

p. 56:5-18; Ex. 7, p. 37:3-11.)  A 911 dispatcher ran a "query" on Plaintiff DMV information, as

did Officer Goode, however, this database did not provide any demographic information about

Plaintiff, nor did it provide a photo.  (Nweze Decl., Ex. 1, p. 2; Ex. 5, p. 99:4-25; Ex. 6, p. 52:18

– p. 53:4, p. 53:14-25, p. 55:1 - 56:25.)  Based upon the limited description of Plaintiff known to

officers, as well as a Facebook screenshot photo provided to Officer Goode by Ms. Birdwell

after the officers had cleared the scene, Officer Goode's impression was that Plaintiff was white,

and documented this perception in the police report that evening.  (Nweze Decl., Ex. 3; Ex. 5, p.

100:8-17, p. 102:5-20, p. 110:13-25, p. 155:24 – p. 156:10; Ex. 8.)

    While on the scene (from approximately 12:15 a.m. until approximately 1:30 a.m.) the

officers attempted to contact Plaintiff through a variety of methods to determine if he was, in

fact, injured and required any assistance.  (Nweze Decl., Ex. 1; Ex. 3; Ex. 4, p. 1.)  Officers

called plaintiff's cellphone several times, rang the doorbell, knocked on Plaintiff's door, loudly

hailed for plaintiff over a P.A. loudspeaker system, did a perimeter search around the residence,

and looked through windows which were accessible either by foot or by a ladder they obtained

from the responding firetruck.  (Nweze Decl., Ex. 3; Ex. 4; Ex. 5, p. 76:23 – p. 77:5, p. 77:22 –

80:12, p. 82:1 – 83:8; Ex. 6, p. 57:4-59:25; Ex. 7, p. 43:12 – 44:20, p. 45:17 – 47:6.)  Despite

these numerous attempts over an hour period of time, Plaintiff did not respond, and officers

could not even know for certain whether Plaintiff was located inside the residence at the time.

CIS LITIGATION
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

(Nweze Decl., Ex. 5, p. 74:16-19, p. 83:1-8; Ex. 6, p. 58:7-9, p. 68:4-6, p. 116:5-17; Ex. 7, p. 43:12 – 44:11, p. 45:17 – p. 46:3, p. 70:3-22.)  The officers saw no smoke inside the house or coming out of the chimney and had no corroboration of any injury to Plaintiff, aside from Ms. Birdwell's statements of seeing an area with blood or a burn on one of his arms.  (Nweze Decl., Ex. 5, p. 77: 6-25; Ex. 6, p. 64:1-13; Ex. 7, p. 44:7 p. 45:15.)

At this point, the officers did not believe they had probable cause to enter the residence, assessed that their governmental interest in entering the residence was low, and did not want to risk inciting a confrontation or use of force situation with Plaintiff.  (Nweze Decl., Ex. 3, p. 2; Ex. 4, p. 2; Ex. 5, p. 94:21 – p. 95:21, p. 126:8 – 127:21, p. 128:19 – 130:22; Ex. 6, p. 95:4 – 97:11, p. 98:5-24, p. 100:18 – 103:10, p. 108:10 – p. 110:14; Ex. 7, p. 95:12 – 96:19.)  These considerations were also relayed to Captain Oddis Rollins, who agreed with the on-scene officers' assessment that they should not attempt to enter the residence at that time and the officers cleared the scene.  (Nweze Decl., Ex. 6, p. 60:2 – 61:25, p. 121:5-17; Ex. 7, p. 72:5-22, p. 75:21 – 76:18.)  Additionally, Ms. Birdwell was able to stay with her boyfriend that evening, so any risk to her was alleviated.  (Nweze Decl., Ex. 3; Ex. 4.)

The next morning, Ms. Birdwell contacted 911 again reporting that she located what she believed to be a human finger in the toilet.  Officer Larry Redler responded and upon a search of the residence, located what did appear to be part of a human finger, along with lots of human hair and what appeared to be burnt flesh in the bathroom.  Officer Redler subsequently located significant quantities of mushrooms, knowns as "Panther Caps" on Plaintiff's kitchen counter and Ms. Birdwell gave him a gallon-sized jar of them from the freezer.  According to Ms. Birdwell, Plaintiff had informed her he located these mushrooms at a nearby graveyard and planned on trying them.  Officer Redler also located what appeared to be a mostly drunk mushroom tea in the kitchen.  (Nweze Decl., Ex. 9.)

Given his findings in the residence, Officer Redler put out an "Attempt to Locate" on Plaintiff and attempted to call his cell phone.  Subsequently, Officer Redler learned from the Marion County Sheriff's Office that Plaintiff had been located in Turner, Oregon that morning,

disoriented, missing numerous fingernails, and with severe burns to his arms and torso. Plaintiff had already been transported to Legacy Emanuel Burn Center. (Nweze Decl., Ex. 9.)

During Plaintiff's depositions, he described the events of November 13-14, 2020, as follows:

Earlier in the day on November 13, 2020, Plaintiff had gone foraging for and procured some hallucinogenic mushrooms. (Nweze Decl., Ex. 10, p. 88:16-25.) When he arrived home that evening, he went on a walk or a run, may have eaten some dinner, smoked marijuana, and then decided to meditate in front of a lit fireplace. (*Id*. at p. 89, lines 6-14, p. 92, lines 9-25, p. 93, lines 1-4.) Plaintiff indicated that at the time he smoked marijuana and then meditated, he was sleep deprived, had been regularly fasting, likely had low blood sugar, and had further exhausted himself with the walk/run earlier. (*Id*. at p. 97, lines 15-22.) Plaintiff recalled that he went into a "feeling like a sense of ecstatism or euphoria" during his meditation, and the next thing he remembered was "coming to like recognizing that [he] was inside the fire[.]" (*Id*. at p. 98, lines 1-25.) When Plaintiff came to in the fireplace, he described realizing that he "should probably not be in the fireplace any longer" and got himself out and went downstairs to Ms. Birdwell's room and ultimately left her room after noticing her being fearful. (*Id*. at p. 102, lines 2-16.) Plaintiff testified in no uncertain terms that at the time he went to Ms. Birdwell's room (which was the event which precipitated her 911 call), he had already sustained his burns. (*Id*., lines 23-25.) Plaintiff did not recall seeing or hearing law enforcement outside his residence later that evening, but he generally recalls other actions he took after leaving Ms. Birdwell's room, such as shaving his head, taking a shower, making hallucinogenic mushroom tea (and it having no perceptible effect on him), and driving his car for a longer period of time, however much of the rest of the events of that evening are unclear. (*See generally*, Nweze Decl., Ex. 10, p. 88:16 – 118:10.)

## III.    SUMMARY JUDGMENT STANDARD.

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is

no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosp's, Inc.*, 929

F.2d 1404, 1409 (9th Cir. 1991), *cert. denied*, 502 U.S. 994 (1991). The moving party must carry

the initial burden of proof. The party meets this burden by identifying portions of the record on

file which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-24 (1986).

Once the moving party meets its initial burden, the non-moving party "must set forth

specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "[I]t [cannot]

be argued that any disagreement about a material issue of fact precludes the use of summary

judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc.*, 818 F.2d

1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). The "mere existence of a

scintilla of evidence in support of the Plaintiff's position would be insufficient" to defeat a

motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).

Evidence that is merely colorable or not significantly probative, does not present a genuine issue

of material fact. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542

(9th Cir. 1989), *cert. denied*, 493 U.S. 809 (1989). Conclusory allegations, unsupported by

factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880

F.2d 1040, 1045 (9th Cir. 1989); *see also Schuler v. Chronicle Broad Co.*, 793 F.2d 1010, 1011

(9th Cir. 1986) (purely "subjective personal judgments do not raise a genuine issue of material

fact"). Accordingly, where "the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no genuine issue for trial." M*atsushita Electric Industrial*

*Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986).

## IV.    ARGUMENT.

### A.    City Defendants Are Entitled to Summary Judgment on Plaintiff's Section 1983 Claims.

To prevail on her § 1983 claims, Plaintiff must establish: (1) a person deprived the

plaintiff or caused the plaintiff to be deprived of a right secured by the Constitution or laws of

the United States; and (2) the deprivation was committed by a person acting under color of state

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

law. *Hyun Ju Park v. City & Cty. of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Plaintiff brings two Section 1983 claims against the individually named defendants in this case for alleged violations of the Fourteenth Amendment. (ECF No. 1, First and Second Claims for Relief.) Plaintiff's First Claim for Relief alleges individual defendants "affirmatively put Relloque in a position of danger and increased the risk of harm to him" – in other words, is make a "state created danger" Fourteenth Amendment claim. (*Id.*, ¶ 38.) Plaintiff's Second Claim for Relief alleges individual defendants "selectively and discriminatorily chose to not render assistance and abandon Relloque, bloodied and burnt during a mental health crisis, based on his race" – namely, making a class based (race) discrimination Fourteenth Amendment claim. (*Id.* ¶ 45.) For the reasons set forth below, both claims fail as a matter of fact and law, and the individual defendants are entitled to qualified immunity.

   1. <u>Matthew Goode, Dana Gunnarson, and Todd Gradwahl's Conduct Does Not Constitute a Violation of the Fourteenth Amendment.</u>

    *i. First Claim for Relief - State Created Danger.*

Generally, the Due Process Clause does not "impose a duty on the state to protect individuals from third parties," or, as in this case, from self-harm. *Morgan v. Gonzales*, 495 F.3d 1084, 1093 (9th Cir. 2007). There exist two exceptions to this rule: (1) the special relationship exception, where a relationship between the plaintiff and the state creates a constitutional duty to protect, and, relevant to this matter, (2) the state-created danger exception, "where the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-202 (1989); *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996). While Ninth Circuit caselaw on the state-created danger exception "is somewhat scattershot," *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011), there are generally two requirements: (1) affirmative actions by defendant(s) that placed plaintiff "in danger that she otherwise would not have faced," and (2) that danger

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

"was known or obvious, and whether [defendants] acted with deliberate indifference to it." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062-64 (9th Cir. 2006).

Plaintiff generically alleges that defendants placed him at "an increased risk of harm," by "refus[ing] to address the serious risk to Relloque." (ECF No. 1 ¶¶ 38-39.) Plaintiff does not articulate how the individual defendants placed Plaintiff in a position of danger, nor does Plaintiff articulate how the risk of harm to himself was increased by individual defendants' actions. (See, ECF No. 1, generally.) The explanation for this lack of information is evidenced by the undisputed facts in this case – simply put, the sole reason Plaintiff was at any risk of danger or harm was due to his own actions and choices, and the conduct of the individual defendants did not, as a matter of fact or law, have any impact on the danger/harms Plaintiff experienced on November 14, 2020. Based upon Plaintiff's own testimony, by the time 911 had been called, the full extent of his injuries had been realized. (Nweze Decl., Ex. 10, p. 102, lines 23-25.) This necessarily means that no action by individual defendants could have either exposed Plaintiff to, or created a risk of, harm that was already done; as such, Plaintiff has not, nor cannot, demonstrate that he suffered any foreseeable injury *as a result* of individual defendants' actions and this claim must be dismissed.

Additionally, when alleging this right has been violated under a theory of state created danger, plaintiff must allege facts demonstrating that plaintiff was directly and foreseeably injured by a <u>third party</u>. *See, J.P. by & through Villanueva v. Cty. of Alameda*, 803 F. App'x 106, 108 (9th Cir. 2020) (citing *Henry A. v. Willden*, 678 F.3d 991, 1002 (9th Cir. 2012)) (state created danger exception only applies in situations where plaintiff is directly harmed by a third party) and *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 843-47 (9th Cir. 2010) (Fourteenth Amendment protects liberty interest in being subject to harm inflicted by another when government actor puts individual in that harm's way); *see also Chase v. Cty. of Nevada*, 81 F. App'x 92, 93 (9th Cir. 2003) (dismissing § 1983 substantive due process claims involving deadly attack on employee by mental patient, noting state's failure to protect against private act of violence was not a due process violation); *Martinez v. City of Clovis*, 943 F.3d 1260, 1271

(9th Cir. 2019) (plaintiff must show that she suffered a foreseeable injury resulting from officer's affirmative actions); *Corgan v. Keema*, 765 F. App'x 228 (9th Cir. 2019) (plaintiff must demonstrate the state failed to protect a person from a risk of harm that it created and that plaintiff was injured as a result); *Lawrence v. United* States, 340 F.3d 952, 957 (9th Cir. 2003) (plaintiff must show defendant affirmatively acted in such a way which created a foreseeable injury to plaintiff); David Pruessner, *The Forgotten Foundation of State-Created Danger Claims,* 20 REV. LIT. 357, 357 (2001) ("The theory of recovery is used against state actors, such as police, when the actor indirectly harms people by creating a danger that ultimately injures them.")  Here, no third party injured Plaintiff, he alone was the sole source of all his injuries, as such, as a matter of law, Plaintiff's claim must be dismissed.

Finally, the substantive due process clause only protects individuals from arbitrary government action that rises to the level of *egregious conduct. Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006). It does not protect individuals from reasonable, <u>even if erroneous,</u> conduct. *Id*.  Such claims have both an objective and subjective component; the objective component requires a showing of "a substantial risk of serious harm" and the subjective component requires a showing that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he . . . also dr[e]w the inference"). *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010).  Here, even when viewed in the light most favorable to Plaintiff, the undisputed facts do not demonstrate that any of individual defendants' conduct was egregious – they utilized the facts and observations they had at the time to determine whether there was a sufficient governmental interest to intrude into Plaintiff's home, without a warrant, and without out probable cause of any crime.  This assessment was done in light of the belief that Plaintiff potentially could be injured, but there was no objective evidence Plaintiff was at "at substantial risk of serious harm" and there is further no evidence that any of the individual officers were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, nor is there any evidence that such an inference was drawn.  The undisputed evidence shows that the individual officers did not reasonably

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

perceive that Plaintiff was seriously injured or at risk of serious harm based upon the facts and circumstances known to them at the time. As such, Plaintiff cannot satisfy his burden, and this claim must be dismissed.

ii.      *Second Claim for Relief – Equal Protection.*

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To sustain his equal protection claim under § 1983, Plaintiff must prove that the individual defendants "acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020) (internal citations omitted); *see also Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998). To survive summary judgment, Plaintiff must set forth evidence from which a reasonable trier of fact could conclude by a preponderance of the evidence that the individually named defendants "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000).

In *Bingham v. City of Manhattan Beach*, a black man challenged the legality of traffic stop and arrest conducted by a white police officer. 341 F.3d 939 (9th Cir. 2003). The plaintiff in *Bingham* argued that because he was black and the defendant officer white, and because he contended the traffic stop was unreasonable, he had sufficiently raised an inference of racial discrimination. *Id*. at 948. The Ninth Circuit held that he had "failed to produce any evidence of discriminatory intent," and that a reasonable trier of fact could not find that the actions taken were at least partially racially motivated. *Id*. at 949; *compare Warren v. City of Carlsbad*, 58 F.3d 439, 443-44 (9th Cir. 1995) (holding a Black plaintiff raised an issue of fact as to intentional discrimination under Title VII of the Civil Rights Act because there was evidence that less-qualified white employees were promoted over him, "together with" statistical evidence of discrimination, subjective criteria used in hiring, and a racist remark).

Here, there is even less evidence that any one of the individual defendants in this case were motivated by a discriminatory animus directed at Pacific Islanders than evidence of racial animus in *Bingham*. The evidence taken in the light most favorable to Plaintiff does not even demonstrate that any of the officers there were aware of Plaintiff's physical appearance (other than naked), his race, or anything else regarding his outward appearance or ethnic or cultural background. Simply stated, if there is no evidence defendants knew Plaintiff's race, there is no factual basis to conclude any of their conduct was motivated by anything resembling discriminatory animus. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754-55 (9th Cir. 2001) (affirming summary judgment against the plaintiffs because they produced insufficient evidence that the employer's decision to demote them was "racially motivated") (quoting *FDIC v. Henderson*, 940 F.2d 465, 473 (9th Cir. 1991)); *Nimer v. Broek*, 2024 U.S. App. LEXIS 12081, *6-7 (9th Cir., 2024) (use of a racial epithet during the encounter, without additional evidence of racial animus, is insufficient to create a genuine issue of fact that a defendant acted in part because of a plaintiff's protected characteristic; *see also Maynard v. City of San Jose*, 37 F.3d 1396, 1405 (9th Cir. 1994) (reversing jury's verdicts for the plaintiff because the evidence did not show that the retaliation against the plaintiff "occurred because [he] assisted a Black person," but rather "suggest[ed] an alternative motive for the defendants' actions").

Beyond evidence of subjective/individual discriminatory animus, such claims are often demonstrated through evidence demonstrating that plaintiff was intentionally treated differently by defendants than others similarly situated. *See Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1240 (9th Cir. 1994); *see also Gagic v. Cnty. of Maricopa*, 2021 U.S. App. LEXIS 37923, *3 (9th Cir. 2021). Here, Plaintiff has not, nor cannot, make such a showing either.

As Plaintiff has not, nor cannot adduce any evidence which would demonstrate individual defendants conduct/decision-making was motivated by discriminatory animus, Plaintiff's Equal Protection claim must be dismissed.

/ / /

**CIS LITIGATION**
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

2.     <u>Matthew Goode, Dana Gunnarson, and Todd Gradwahl Are Entitled to Qualified Immunity</u>.

Officer Goode, Sergeant Gunnarson (formerly Officer Gunnarson), and Sergeant Gradwahl are entitled to qualified immunity. Qualified immunity shields government officials under Section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Court may address the two prongs in any order.   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity is a question of law, not of fact.   *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). Plaintiff bears the burden of proving that qualified immunity should not be granted.   *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018) (quoting *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017)); *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012); *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664. This "mean[s] that existing precedent placed the statutory or constitutional question beyond debate.'" *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This exacting standard "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."   *Id*.

The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality.   *Kisela*, 138 S. Ct. at 1152; *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). In other words, Plaintiff must point to prior case law that articulates a constitutional rule specific enough to alert these officers in this case that their particular conduct was unlawful in the

specific context of the case. *Mullenix*, 577 U.S. at 12; *Sharp v. Cty. of Orange*, 871 F.3d 901, 905 (9th Cir. 2017). To achieve that kind of notice, the prior precedent must be "controlling"— from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. *Id.; Wilson v. Layne*, 526 U.S. 603, 617 (1999). Plaintiff bears the burden of showing that the rights allegedly at issue were clearly established. *Shafer*, 868 F.3d 1110, 1118 (9th Cir. 2017).

To defeat qualified immunity, Plaintiff must show that, given the case law available at the time, a reasonable law enforcement officer, knowing what these three individuals knew at the time, would have understood that failing to execute a warrantless entry into Plaintiff's residence unsupported by probable cause of any crime, "presented such a substantial risk of harm to [Plaintiff] that the failure to act was unconstitutional." *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 678 (9th Cir. 2021) (citing *Horton ex rel. Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019). Defendants are not aware of any case law which squarely demonstrates that the conduct of Officer Goode, Sergeant Gunnarson, or Sergeant Gradwahl was unconstitutional beyond debate. *See Ashcroft v. al-Kidd*, 563 U.S. at 741. It is indisputable that the individual officers did not believe Plaintiff to be seriously injured (only that he possibly had a smaller burn or patch of blood on his arm), understood him to be ambulatory, able to speak, and able to understand his roommate's directions. It is also indisputable that Plaintiff's exact location at the time the defendants were outside his residence was unknown, and that he was not responding to their numerous attempts to contact him and offer him some form of assistance. Furthermore, it is beyond debate that Plaintiff has extraordinarily high constitutional protections within the confines of his residence, and law enforcement must have a compelling lawful basis to intrude into a person's home absent a warrant, and, critically, that none of the individually named officers, nor their Captain, Oddis Rollis, subjectively perceived that they had a compelling enough governmental interest, or other lawful basis, to enter Plaintiff's home that evening. Given these facts, a reasonable law enforcement officer would not understand that failing to

enter Plaintiff's residence without a warrant to locate and assess Plaintiff for indeterminate/unestablished harm could pose a significant risk of harm to Plaintiff.

Furthermore, Defendants have been unable to locate any precedent which would permit Plaintiff to recover for his injuries, under either Section 1983 claim, which had been fully realized before individual defendants had ever been called to the scene.

It is Plaintiff's burden to so establish and Plaintiff will be unable to do so. Accordingly, Officer Goode, Sergeant Gunnarson, and Sergeant Gradwahl are entitled to qualified immunity and should be granted summary judgment.

For all the reasons previously set forth, Officer Goode, Sergeant Gunnarson, and Sergeant Gradwahl are entitled to summary judgment on Plaintiff's First and Second Claims for Relief, and they should therefore be dismissed with prejudice.

**B.    City Defendants Are Entitled to Summary Judgment on Plaintiff's State Tort Claims.**

Plaintiff brings two state tort claims against the City of West Linn in this case, namely, negligence and intentional infliction of emotional distress.  (ECF No. 1, Third and Fourth Claims for Relief.)  Plaintiff's Third Claim for Relief alleges the City "Defendants, having undertaken a welfare check and learning of injury to Relloque failed to conduct a reasonable investigation and assess the extent of his injury or his danger to himself or others."  (*Id*., ¶ 53.)  In a seemingly contradictory allegation, Plaintiff further asserts that "Relloque suffered injuries" as a result of this alleged failure of by Defendants.  (*Id*., ¶ 55.)  It is unclear how Plaintiff's injuries were *caused* by the purported negligence when the allegation is they were negligent for not reasonably investigating said injuries.  Plaintiff's Fourth Claim for Relief makes threadbare and garden-variety assertions, which merely articulate the established elements for the tort of Intentional Infliction of Emotional Distress.  (*Id*. ¶¶ 60-63.)  For the reasons set forth below, both claims fail as a matter of fact and law.

/ / /

/ / /

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

      1.    <u>Negligence Claim</u>.

In Oregon, a common-law negligence claim requires the plaintiff to allege and prove the following: (1) that defendant's conduct caused a foreseeable risk of harm; (2) that the risk is to an interest of a kind that the law protects against negligent invasion; (3) that defendant's conduct was unreasonable in light of the risk; (4) that the conduct was a cause of plaintiff's harm; and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent. *Son v. Ashland Community Healthcare Services*, 239 Or. App. 495, 506 (2010) (quoting *Solberg v. Johnson*, 306 Or. 484, 490–491 (1988)).

In determining causation, under Oregon law, the critical question is whether the defendant's conduct was a "substantial factor in producing plaintiff's injury." *Simpson v. Sisters of Charity of Providence in Oregon*, 284 Or. 547, 555 (1978). In other words, "but for" the City's conduct, would Plaintiff have been injured. *Joshi v. Providence Health System of Oregon Corp.*, 198 Or. App. 535, 539 (2005), *aff'd*, 342 Or. 152 (2006). For the reasons discussed supra, the City is objectively not responsible, as both a matter of fact and law, for the injuries sustained by Plaintiff (as they were undisputedly self-inflicted and fully realized before any City employee responded to the 911 call).

Foreseeability requires proof that the City either knew or should have known about the risk alleged and that defendants' conduct was the cause of Plaintiff's foreseeable harm. *See Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or. 434, 441 (1988); *Son*, 239 Or. App. at 506. "For liability to attach under a general foreseeability theory, a trier of fact must be able to find that there was a reasonably foreseeable risk of harm to the plaintiff and that the defendant's conduct was unreasonable in light of that risk." *Fraker v. Benton County Sheriff's Office*, 214 Or. App. 473, 490 (2007). Plaintiff has further failed to establish that Plaintiff's injuries were reasonably foreseeable to the City in light of the facts and circumstances known to the officers who responded to the 911 call. There was no objective evidence known to them at the time which

Page 15 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

would cause a reasonably prudent law enforcement officer to foresee that Plaintiff was at risk of (or already had suffered) significant third degree burns over a significant portion of his body.

Finally, unreasonable conduct "is measured by what a reasonable person of ordinary prudence would, or would not, do in the same or similar circumstances." *Woolston v. Wells*, 297 Or. 548, 557 (1984). Foreseeability of the harm and the reasonableness of the conduct are two distinct elements, and each must be independently proved. *Graham v. Multnomah County*, 158 Or. App. 106, 110 (1999). In determining whether conduct is reasonable, the trier of fact is to consider the following factors: (1) likelihood of harm; (2) severity of the possible harm; (3) cost of action that would prevent the harm; and (4) defendant's position, including the defendant's relationship with the plaintiff. *Pickens v. U.S.*, 750 F.Supp.2d 1243, 1257 (D. Or. 2010) (quoting *Fuhrer*, 306 Or. at 439). Finally, Plaintiff has failed to establish that the City acted unreasonably in light of the (unforeseeable and already realized) "risk" to Plaintiff. There was nothing inherently urgent, or emergent, about Plaintiff's condition given the information provided to the individual officer, but regardless they made numerous efforts over more than sixty minutes attempting to contact Plaintiff and offer him assistance if needed. It was reasonable for the officers to balance the facts and circumstances against state and constitutional protections to determine an appropriate course of action. A reasonably prudent law enforcement officer would have acted in the same or similar manner as the individual defendants under similar circumstances.

In addition to the fundamental factual flaws with Plaintiff's negligence claim, Plaintiff's claim is also unsupportable as a matter of law. Generally speaking, a complaint fails to state a claim of negligence when it alleges no physical injury inflicted by defendant. *Paul v. Providence Health Sys.-Oregon*, 351 Or. 587, 597, 273 P.3d 106 (2012) (citing *Hammond v. Central Lance Communications Center*, 312 Or. 17, 23-24, 816 P.2d 593 (1991) ("[t]his court consistently has rejected claims for emotional distress damages caused by a defendant's negligence, in the absence of any physical injury."). Under a theory of negligence in the absence of allegations of physical injury (which, in this case is demonstrable by the fact than any and all

physical injury had already resulted before any alleged negligent act by defendant had occurred), in order to recover for economic damages or emotional distress damages, defendant's liability must be predicated on some duty defendant owed to plaintiff beyond the common law duty to exercise reasonable care to prevent foreseeable harm. *Paul*, 351 Or. at 593-98.

In the absence of allegations of physical injury (at the hands of defendants), plaintiff may only recover for emotional distress damages related to a negligence claim where plaintiff can establish either intentional conduct on the part of defendant, or that "defendant's conduct infringed on some legally protected interest apart from causing the claimed distress," in other words, that a special relationship existed between plaintiff and defendant. *Paul*, 351 Or. at 597-98 (citing *Hammond*, 312 Or. at 23-24). Plaintiff cannot demonstrate that a special relationship existed between the City and Plaintiff which would support his claim of negligence.

Oregon Supreme Court primarily looks to "standards of conduct in the American Law Institute's Restatements of the Law" to establish negligence-related duties. *Park v. Hoffard*, 315 Or. 624, 629 (1993). While the Restatement states that "law-enforcement officers" hold affirmative duties as "custodians," see Restatement (Third) of Torts: Phys. & Emot. Harm Index L90 (2012), custodians only owe a duty of care to "those in [their] custody." Restatement (Third) of Torts: Phys. & Emot. Harm § 40 (2012).

Here, Plaintiff was not ever in the City's custody. He was a member of the public, and law enforcement officials have "no special relationship to members of the public in general." *Buchler v. State By & Through Oregon Corp. Div.*, 316 Or. 499, 505-06 (1993) (declining to find that a correctional institution owed a duty to the public for the actions of prison escapees). Accordingly, within the context of this negligence claim, there is no special relationship nor duty owed by defendants to plaintiff.

Accordingly, the City, and to the extent this claim is made against the individual officers, Officer Goode, Sergeant Gunnarson, and Sergeant Gradwahl are entitled to summary judgment on Plaintiff's Third Claim for Relief, and it should be dismissed with prejudice.

As Plaintiff has failed to allege (and cannot prove) his negligence claims are based either

upon physical injury inflicted by Defendants nor a special relationship between Plaintiff and

Defendants existed as a matter of law, he has failed to state a claim for negligence and Plaintiff's

Third Claim for Relief should be dismissed with prejudice.

      2.    Intentional Infliction of Emotional Distress Claim.

In order to state a claim for IIED, Plaintiff must allege facts demonstrating that:

1) defendant intended to inflict severe mental or emotional distress or distress was substantially

certain to result from defendant's conduct; 2) defendant's actions in fact caused plaintiff severe

mental or emotional distress; and 3) defendant's actions constituted an "extraordinary

transgression of the bounds of socially tolerable conduct." *Patton v. J.C. Penney Co., Inc.*, 301

Or. 117, 122, 719 P.2d 854 (1986) (quoting *Hall v. May Dept. Stores Co.*, 292 Or. 131, 135, 137,

637 P.2d 126 (1981)).

As an initial matter, even in the light most favorable to Plaintiff, there is not even a

scintilla of evidence that Defendants intended to inflict any form of distress upon Plaintiff.  To

the contrary, the only inference which can reasonably be drawn from the undisputed evidence is

that Defendants wanted to avoid causing Plaintiff any distress, specifically in their undisputed

and collectively stated desire to avoid instigating a use of force situation with Plaintiff.

Proof of this tort often turns on the third element, therefore the trial court plays a

"gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious

conduct to determine whether it goes beyond the farthest reaches of socially tolerable

behavior[.]" *House v. Hicks*, 218 Or. App. 348, 358, 179 P.3d 730 (2008).  The conduct alleged

must be "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Id*.  Conduct which is merely "rude, boorish, tyrannical, churlish and mean" fail to

meet this standard, nor do "insults harsh or intimidating words, or rude behavior[.]" *Harris v.*

*UBH of Oregon, LLC,* No. 3:17-CV-01296-AA, 2017 WL 4182816, at *2 (D. Or. Sept. 21, 2017)

*(*quoting *Watte v. Edgar Maeyens,* 828 P.2d 479, 481 (Or. Ct. App. 1992)).

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

In a nutshell, Plaintiff has alleged that Defendants responded to a 911 call, spend considerable time and effort attempting to determine the facts and locate Plaintiff, were unable to contact or locate Plaintiff or determine with any reasonable degree of certainty whether, or the extent of any injury to Plaintiff, made a determination that a warrantless entry into Plaintiff's home in the face of no subjective belief of probable cause was inappropriate and unsupported by a sufficient governmental interest, closed out the call as a result of this determination, and documented their subjective determinations and investigative efforts in police reports. The allegations regarding Defendants' conduct do not under any reasoned assessment rise to such an outrageous and extreme degree to "go beyond all possible bounds of decency."

The undisputed facts fail to satisfy both the first and third element of this tort, and based upon these manifest deficiencies, the City, and to the extent this claim is made against the individual officers, Officer Goode, Sergeant Gunnarson, and Sergeant Gradwahl, are entitled to summary judgment on Plaintiff's Third Claim for Relief, and it should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court enter an order granting summary judgment in its favor and against Plaintiff.

Respectfully submitted this 31st day of January 2025.

CIS LITIGATION

By:  s/ *Lauren E. Nweze*
      Lauren E. Nweze, OSB No. 145218
      Of Attorneys for Defendants

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**