**David C. Lewis**, OSB No. 953348
E-mail:  dlewis@cisoregon.org
**Lauren E. Nweze**, OSB No. 145218
E-mail:  lnweze@cisoregon.org
**CIS LITIGATION**
15875 Boones Ferry Road, #1469
Lake Oswego, OR 97035
Telephone: (503)763-3800
Facsimile: (503) 763-3900

Of Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MICHAEL AUSTIN RELLOQUE, IV**, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF WEST LINN, MATTHEW GOODE, DANA GUNNARSON, TODD GRADWAHL**, <br><br> Defendants. | No. 3:22-cv-01781-SI <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> <u>**ORAL ARGUMENT REQUESTED**</u> |

## INTRODUCTION

Plaintiff's Response to Defendants' Motion for Summary Judgment confirms that summary judgment should be granted as to all of Plaintiff's claims.  Plaintiff has failed to establish genuine issues of material facts as to his claims and has failed to point to any clearly established law which would put the individual defendants in this case on notice that their conduct, in light of the facts and circumstances as they knew them, was unconstitutional, thereby entitling Officers Goode, Sergeant Gunnarson, and Sergeant Gradwahl to qualified immunity.

/ / /

Page 1 –    REPLY IN SUPPORT OF DEFENDANTS'
           MOTION FOR SUMMARY JUDGMENT

**CIS LITIGATION**
**15875 Boones Ferry Rd., #1469**
**Lake Oswego, OR 97035**
**Telephone: (503) 763-3800**

Finally, Plaintiff's remaining state law claims fail as Plaintiff's claims are precluded as a matter of law and has also failed to establish questions of material fact as to both claims.

# EVIDENTIARY OBJECTIONS

# LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, the undersigned certifies that counsel for Defendants have conferred telephonically in good faith with Plaintiff's counsel and were unable to resolve the evidentiary objections.

1. <u>Exhibits 4, 7, 12, 14, 15 (Declaration of Beth in Opposition of Defendants' Summary Judgment Motion): OIR Group Review, News Articles, and DA's Office Brady Report Related to Michael Fesser (ECF No. 43)</u>.

Defendants object to these exhibits on the grounds of hearsay and relevance. These exhibits contain hearsay, include hearsay within hearsay, and are not subject to any exception. FRE 801-805. Furthermore, none of the individual defendants named in this case were involved in the Fesser incident in any fashion, nor has Plaintiff adduced any evidence that the individual defendants voiced *any* kind of support for the improper conduct of (now former) WLPD employees involved, nor do the facts of the Fesser incident bear even a remote resemblance to the facts in this case, as such, these exhibits lack relevancy, are unfairly prejudicial, confuse the issues, and waste time. FRE 402, 403.

2. <u>References to George Floyd/Breonna Taylor and Any Related News Articles</u>.

Defendants object to these articles and references on grounds of relevance. None of the individual defendants named in this case were involved in the Floyd or Taylor incidents in any fashion, nor has Plaintiff adduced any evidence that the individual defendants voiced *any* kind of support for the improper conduct of the outside employees or police departments involved, nor do the facts of the Floyd or Taylor incidents bear even a remote resemblance to the facts in this case, as such, such arguments and articles lack relevancy, are unfairly prejudicial, confuse the issues, and waste time. FRE 402, 403.

/ / /

    3.    <u>Ex. 2 (Declaration of Michael Relloque IV in Opposition of Defendants' Summary Judgment Motion) (Mislabeled as Ex. 8): Plaintiff's California Driver's License ECF No. 40, p. 5)</u>.

Defendants object to this exhibit on grounds of relevance. Plaintiff does not make a single reference to this exhibit in the 45-page Response. Further, there is no evidence in the record that any of the Defendants ever saw this driver's license. The only evidence in the record is that none did or would have been able to see this license. (Nweze Decl., Ex. 10, p. 6.) Accordingly, this exhibit has no relevance. FRE 402, 403.

    4.    <u>Ex. 8 (Declaration of Michael Relloque IV in Opposition of Defendants' Summary Judgment Motion): Post-Incident Photos of Plaintiff's Injuries (ECF No. 40, pp. 7-96)</u>.

Plaintiff offers voluminous photos of Plaintiff's injuries from the time he was at the Legacy Burn Center (all undisputedly taken after the events at issue). Plaintiff offers no evidence that these photos accurately reflect how Plaintiff appeared during the relevant time (when Melissa Birdwell saw him). Additionally, from the timing, location, and images captured in the photos, it is clear that Plaintiff had received care for his injuries, including been cleaned and dressed to some degree, and, according to Plaintiff's testimony, he had showered at some point between when he sustained these injuries and when these photos were taken. Accordingly, these photos have no relevance to the issues before this court and only serve to create unfair prejudice, confuse the facts and issues, inject bias, and waste time. FRE 402, 403.

    5.    <u>Declaration of Michael Relloque IV in Opposition of Defendants' Summary Judgment Motion – Paragraphs 4, 5, 8, 10, 13, 17, and 18 (ECF No. 40)</u>.

Plaintiff offers his own Declaration, in which he makes numerous statements which are directly controverted by his prior sworn deposition testimony. Defendants move to strike Plaintiff's below referenced Declaration statements under the sham declaration rule. (ECF No. 40). Below are the declaration statements with the corresponding, and flatly contradictory, deposition testimony citations.

/ / /

Page 3 –   **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

- Paragraph 4: "I smoked less than a bong bowl of cannabis to enhance my meditation experience."
    - See Nweze Decl., Ex. 1, p. 84:20-85:3.
    - Plaintiff was not definitive in deposition, testified he could have smoked the whole bowl.
- Paragraph 5: "I sat naked, wrapped in a blanket about 3 feet from the fireplace."
    - See Nweze Decl., Ex. 1, p. 100:9-12, 100:19-22.
    - Plaintiff was within "arms reach" of the fire.
- Paragraph 8: "In my deposition, I said 'I think that is when I went downstairs through Melissa's room,' but I cannot be sure of what point I went to her room."
    - See Nweze Decl., Ex. 1, p. 97:23-98:15, p. 101:19-102:25.
    - Plaintiff was very clear that he went down to Ms. Birdwell's room very shortly after he got out of the fire and realized he was burned.
- Paragraph 10: "At the time I was in Melissa's room, I do not recall having burns on my face or chest or arms."
    - See Nweze Decl., Ex. 1, p. 97:23-98:15, p. 101:19-102:25.
    - Plaintiff testified he was aware of the burns on his body once he came to and got out of the fire.
- Paragraph 13: "A couple hours after I left Melissa Birdwell's room when I was alone in the house, I realized that I was in bad shape and I made some mushroom tea. I was already in a delusional state, I did not notice any effects of the tea on me at all. At that point, I remember knowing that I was burnt."
    - See Nweze Decl., Ex. 1, p. 102: 6-104:24.
    - This is misleading, during his deposition, Plaintiff testified that it was at this point that he began to realize the *extent* of his injuries – not that was only just then realizing he was burned. He testified noticing being burnt as soon as he came out of the fire.

Page 4 –    REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

CIS LITIGATION
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

- Paragraph 17: "It is possible that I was burnt on more than one occasion."
    - See, generally, Nweze Decl., Ex. 1.
    - Nothing in the entire deposition transcript either implies or suggests in any fashion that Plaintiff's burns were sustained in two distinct episodes. There is no evidence the fire was still lit and no evidence that Plaintiff stoked or relit the fire and again found himself inside the fire or otherwise exposed to fire such that he could have sustained subsequent injuries.
- Paragraph 18: "Upon further reflection, had my hands been burnt they way they were when I got to Turner, Oregon, I would not have been able to use my hair clippers or manipulate the switch with my fingers to turn them on. I would not have been able to turn doorknobs to open doors in the house. I would not have been able to make tea."
    - See Nweze Decl., Ex. 1: p. 103, 18- 105:13, p. 109:19-110:19, p. 112:3-6.
    - Repeated references to him performing these tasks, or other similar tasks when the full extent of his injuries had been realized.

Under the Sham Declaration Rule, a District Court may strike an affidavit when there is <u>clear and unambiguous inconsistency</u> between a party's deposition testimony and a subsequent affidavit. *Van Asdale v. International Game Technology*, 577 F.3d 989 (9th Cir. 2009). "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). In fact, courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (collecting cases). The "sham affidavit rule," generally "should be applied with caution" because it "is in tension with the principle that a court's role in deciding a summary judgment motion is not to make

credibility determinations or weigh conflicting evidence." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). "[N]ewly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012) (citing *Cleveland*, 526 U.S. at 806–07 (stating the general rule that parties may explain or attempt to resolve contradictions with an explanation that is sufficiently reasonable)). "[T]he sham affidavit rule should apply to 'contradictions' created by a witness's inability to remember certain information at deposition, and the witness's subsequent unexplained ability to remember the same information in an affidavit given in opposition to a summary judgment motion." *Tarleton LLC v. State Farm Fire & Cas. Co.*, 2014 U.S. Dist. LEXIS 69970, *20-21 (D. Or. 2014).

Plaintiff provides no reasonable explanation for why he now remembers information he could not recall prior, or why he now "recalls" completely contradictory information. This Declaration is a blatant and self-serving attempt by Plaintiff to try and avoid summary judgment by contradicting his previous sworn testimony, and as such, the above referenced portions should be struck pursuant to the sham affidavit rule.

      6.      Declaration of Dr. Mark Baskerville in Opposition of Defendants' Summary Motion Judgment (ECF No. 42).

Defendants object on the grounds Dr. Baskerville's opinions are not sufficient under the applicable rules. FRE 702, 703, 705. Dr. Baskerville is a "board-certified physician in the specialties of emergency medicine, anesthesiology, critical care, addiction medicine, and neurocritical care." While Dr. Baskerville undoubtedly can offer opinions within those practice areas as it relates to the standard of care for medical doctors, opinions outside the scope of this expertise would be improper lay opinions. Dr. Baskerville's Declaration and attached CV make no mention that he has experience, training, or expertise so as to qualify him to opine on the community standard of care for either law enforcement officers or EMTs. Accordingly, any opinions rendered outside the scope of his expertise should be given no consideration.

//

Page 6 –    **REPLY IN SUPPORT OF DEFENDANTS'
            MOTION FOR SUMMARY JUDGMENT**

CIS LITIGATION
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

**MEMORANDUM OF LAW**

**A.      Plaintiff's Section 1983 Claims**.

      1.      <u>First Claim for Relief: Fourteenth Amendment "State Created Danger" Claim</u>.

Plaintiff relies on two cases to argue both that he has satisfied his evidentiary burden and to attempt to argue that the individual defendants are not entitled to qualified immunity in this case. These cases, *Penilla by & Through Penilla v. City of Huntington Park* and *Munger v. City of Glasgow Police Dep't*, however, fail to so establish as Plaintiff has overstated the holding of these cases and they are factually distinguishable from the facts in this matter. 115 F3d 707, 709 (9th Cir 1997); 227 F3d 1082, 1087 (9th Cir 2000).

In *Penilla*, the Ninth Circuit articulated the following underlying (alleged) facts which sufficiently alleged "affirmative actions that significantly increased the risk facing Penilla" as required to state a Fourteenth Amendment "State Created Danger" claim: "they cancelled the 911 call to the paramedics; they dragged Penilla from his porch, where he was in public view, into an empty house; they then locked the door and left him there alone. And they allegedly did so *after* they had examined him and found him to be in serious medical need." 115 F.3d at 710. The opinion went on to state that by "cancelling the 911 call, removing Penilla from public view, and locking the front door, the officers made it impossible for anyone to provide emergency medical care to Penilla." *Id*.

Of particular note, while so concluding, the Ninth Circuit pointed out that "Appellees do not allege that *the officers attempted, but failed,* to rescue Penilla, *or even that they should have, but did not, attempt to rescue him*. Their allegation is that the officers placed Penilla in danger in deliberate indifference to his medical needs." *Id*. at 709 (emphasis added).

In *Munger*, defendant law enforcement officers were called to a bar where Munger was obviously drunk, belligerent, and had been fighting with other patrons. 227 F.3d at 1084. When the police arrived, Munger was standing just outside, but they all walked into the bar together. At some point after, the officers either "ejected" Munger or physically escorted him out of the

bar, where the conditions outside were 11 degrees with a windchill factor of minus 20-25 degrees. *Id*. Munger was wearing only jeans and a t-shirt at the time. *Id*. Officers then watched Munger walk away towards an abandoned railway yard. *Id*. at 1085. Based upon these facts, the Ninth Circuit concluded there was sufficient evidence of affirmative conduct on the part of the police which left Munger "in a situation that was more dangerous than the one in which they found him." *Id*. at 1086-7.

Neither of these cases stand for the proposition articulated by Plaintiff: that "courts routinely find liability in 1983 claims where the "officers' alleged conduct" places plaintiffs "in a more dangerous position," even when that "more dangerous position" is caused by an intervening event." (ECF No. 39, p. 27.) In both of the cases cited by Plaintiff, as well as every case reviewed by counsel for Defendants, Plaintiff *must* establish that there was an affirmative action by Defendants which resulted in Plaintiff being in a more dangerous situation than before their involvement. If the *sole* reason for increased danger is Plaintiff's conduct alone (rather than an aggravation of danger caused by a defendant), Plaintiff has failed to meet his burden.

Additionally, as these cases are so distinct from the facts of this case, neither meets Plaintiff's burden of proving that qualified immunity should not be granted. They do not squarely demonstrate that the conduct of Officer Goode, Sergeant Gunnarson, or Sergeant Gradwahl was unconstitutional beyond debate.

The undisputed facts in this case, even viewed in the light most favorable to Plaintiff, are an extremely far cry from those articulated in *Penilla* and *Munger*. When Officer Goode, Sergeant Gunnarson, and Sergeant Gradwahl were dispatched to the call regarding Plaintiff, his roommate, Melissa Birdwell, was already outside the residence and there were no emergency services either present at the residence or attempting to provide assistance to him. (ECF No. 37-1.) Also at that time, Plaintiff's last known location was inside the property, the individual defendants understood Plaintiff had a cell phone, as well as several doors through which he could exit the property (which were left undisturbed by the individual officers). (ECF No. 37-3 and 37-4.) While the officers understood Plaintiff may have ingested mushrooms and there likely

Page 8 –   **REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**CIS LITIGATION**
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

was some degree of injury to Plaintiff, they were unsure of the extent of the injury, but were definitively aware that he was mobile, verbal, and responsive to commands as of Ms. Birdwell's last contact. *Id*. The officers never interacted with Plaintiff, physically moved him into a different (and more dangerous) location, and did not change any of the material circumstances in which Plaintiff found himself in when they were initially dispatched to the call. *Id*.

These circumstances are akin to those rejected by the Supreme Court in *Deshaney v. Winnebago County Dep't of Social Services*: "while the [defendant] may have been aware of the dangers that [the individual] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. […defendants] placed him in no worse position than that in which he would have been had [they] not acted at all. " 489 U.S. 189, 201 (1989). Plaintiff concedes as much in his Response: "[w]ithout interacting with Relloque at all, Defendant officers then left the scene, leaving Relloque alone in a residence with a burning wood-burning stove[1] and access to his own vehicle in the driveway" (ECF No. 39, p. 26) and "Defendants sending away both Relloque's roommate and any trained medical help he could receive[2], then leaving Relloque alone, placed Relloque in the dangerous position of being alone in an altered mental state, in an environment in which he had already injured himself" (*Id*. at p. 31). These are the exact circumstances in which Plaintiff existed prior to Defendant's response to the call for service – in other words, Plaintiff was in the same position had Defendants not acted at all.

Furthermore, Plaintiff's arguments (in part) rely on numerous "facts" which neither occurred nor has Plaintiff raised a reasonable question as to. Most critically, whether Plaintiff sustained any injuries after the officers cleared the scene after attempting to contact him for an

---

[1] With the exception that, at the time Defendants cleared the scene, there is no evidence the fire was still burning – arguably demonstrating Plaintiff was in a less dangerous circumstance than before.

[2] As discussed *infra*, these third parties made their own independent, discretionary decisions for which Defendants cannot be held vicariously liable.

| Page 9 – | **REPLY IN SUPPORT OF DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT** | **CIS LITIGATION**<br>15875 Boones Ferry Rd., #1469<br>Lake Oswego, OR 97035<br>Telephone: (503) 763-3800 |
|---|---|---|

hour and a half. As addressed *supra* in the objections, Plaintiff's Declaration making self-serving statements which are clearly and unequivocally contradicted by his previous deposition testimony must be disregarded. The only evidence which can be considered is that offered in his deposition, which undisputedly demonstrates that at the time the 911 call was placed by Ms. Birdwell, the full extent of the injuries had already been sustained.

Moreover, to the extent his Declaration is considered, which Defendants maintain they should not be for the reasons articulated *supra*, Plaintiff's Declaration testimony fails to create a question of fact as his opinion is entirely grounded in speculation. Uncorroborated and self-serving testimony does not defeat a properly supported motion for summary judgment. *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1061 (9th Cir. 2002). Mere allegation and speculation do not create a factual dispute for purposes of a summary judgment motion. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). There are no facts in Plaintiff's Declaration, nor are there any facts in the record, which establishes Plaintiff sustained any injuries after the 911 call was placed by Ms. Birdwell. Nor is there any evidence that a fire was ever lit after that point. (See Nweze Decl., Ex. 8, p. 77:2-21, 82:11-25, p. 83:1-8, p. 95:15-21; Nweze Decl., Ex. 9, p. 44:12-20.) Absent such evidence, and in the face of contradictory evidence, no inference whatsoever can be that Plaintiff sustained injuries after Defendants cleared the scene. Accordingly, his "opinion" and the attendant arguments made in Plaintiff's Response are pure speculation and cannot be considered to raise a question of fact. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data"); *see also Thompson Metal Fab, Inc. v. U.S. Dep't of Transp.*, 289 F.R.D. 637, 640 (D. Or. 2013) ("conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

Additionally, there is no evidence in the records that Ms. Birdwell was given a "directive" to leave her residence. (*See* ECF No. 39, p. 26.) To the contrary, Ms. Birdwell testified that she decided to leave the residence that evening because she "felt unsafe going back

Page 10 – **REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

CIS LITIGATION
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

in there," not because she was in some form ordered to do so. Nweze Decl., Ex. 2, p. 37:1-14; see also ECF No. 37-4, p. 1, 2 (Birdwell stated she could stay with her boyfriend; officers made suggestion, not order). Similarly, there is no evidence that fire/medical (TVF&R and AMR) were "ordered" to leave or somehow prevented from providing medical care to Plaintiff by Defendants as Plaintiff argues in his Response. (*See* ECF No. 39, p. 26.) To the contrary, the undisputed evidence demonstrates that these are independent organizations which operate under their own policies, training, and command structure, and Defendants did not have or exercise any legal authority to dictate or restrict their operations or decision-making. (See Nweze Decl., Ex. 3, pp. 62:8-63:9, p. 82:16-18; Nweze Decl., Ex. 4, p. 11:7-11, p. 58:12-16, p. 61: 4-9, 61:19-25, 61:1-18; Nweze Decl., Ex. 5, p. 53:17-21, p. 54:1-3, p. 61:8 – 62:4; Nweze Decl., Ex. 6, p. 27:6-13, p. 28:11-20; Nweze Decl., Ex. 7, p. 64:20 – 65:13, p. 71:8 – 72:5, p. 74:1-25, p. 143:22 – 145:-19, p. 146:3-19; Nweze Decl., Ex. 8, p. 93:8-19; Nweze Decl., Ex. 9, p. 49:1-12.

Moreover, Plaintiff has failed to provide this Court with any precedent that Defendants can be held liable under a Fourteenth Amendment state-created danger theory for autonomous, discretionary decisions made by third parties (namely Ms. Birdwell, TVF&R and AMR). Plaintiff has failed to adduce any evidence that Defendants had any legal authority over these third parties, that Defendants issued any lawful orders to these third parties, or that Defendants affirmatively prevented these third parties from providing aid to Plaintiff (assuming he would consent to such aid or could even be located/contacted). Defendants are unaware of any precedent which has extended liability to such an attenuated degree under a state-created danger claim.

Plaintiff argues that Defendants were deliberately indifferent to Plaintiff because: "It is apparent and obvious that an individual in an altered mental state, who has already injured themselves, is likely to injure themselves again." (ECF No. 39, p. 29.) And further argues that they were deliberately indifferent because they failed to act under their "community caretaking function." However, neither argument carries much water. The question is not simply whether Plaintiff was "likely" to injure himself again, but rather, there must be evidence demonstrating

Page 11 –   **REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**CIS LITIGATION**
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

that Defendants acted with deliberate indifference, in other words, they must have recognized the "unreasonable risk and actually intended to expose the plaintiff to such risks without regard to the consequences to the plaintiff.'" *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (citing *Herrera v. L.A. Unified Sch. Dist.*, 18 F.4th 1156, 1161 (9th Cir. 2021). In other words, Plaintiff must prove Defendants "kn[ew] that something is going to happen but ignored the risk and exposed [the plaintiff] to it." *Id*. (citing *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). Here, Plaintiff has failed to establish that he was exposed to an "unreasonable risk" (as he sustained no subsequent injury) or that any of Defendants knowingly and intentionally exposed Plaintiff to said (non-existent) unreasonable risk. As to Plaintiff's arguments regarding a departmental "community caretaking function" this bears no relationship to the Defendants constitutional obligations and Plaintiff offers no authority demonstrating such. It is also irrelevant, for purposes of a Fourteenth Amendment claim, as to whether Mr. Bercovici believes that the Defendants' conduct was "unreasonable." When establishing deliberate indifference, the "standard is higher than gross negligence and requires a culpable mental state." *Murguia*, 61 F.4th at 1111.

Plaintiff also spends considerable energy arguing that previous drafts of Officer Goode's report demonstrate some kind of discriminatory or nefarious intent – however, as demonstrated in the Declarations of Toni Swanberg, Officer Goode, and Sergeant Gradwahl – all the changes with which Plaintiff takes great umbrage to all occurred prior in time to when Plaintiff was located in Turner and his injuries were discovered and were made solely with the intent that the contents be as accurate and grounded in evidentiary support as possible. (Swanberg Decl., ¶¶ 2-9; Goode Decl., ¶¶ 2-6; Gradwahl Decl., ¶¶ 2-5.)

For these reasons, and those articulated in Defendants' Motion for Summary Judgment (ECF No. 36), Defendants Officer Goode, Sergeant Gunnarson, and Sergeant Gradwahl are entitled to qualified immunity and all Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment "State Created Danger" claim and it should be dismissed with prejudice.

///

    a.  <u>Second Claim for Relief: Fourteenth Amendment "Equal Protection" Claim</u>.

  Plaintiff spent almost his entire Response related to this claim attempting to prove that at least one of the individual defendants was aware of Plaintiff's race at the time they were at the scene responding to Ms. Birdwell's 911 call. While the evidence on this issue is exceedingly scant and overwhelmingly contradicted[3], it only matters insofar as Plaintiff can further establish that the individual officers acted upon this purported knowledge "with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1022 (9th Cir. 2020) (internal citations omitted); *see also Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998). It is also necessary to point out that Plaintiff's Response either mistakes, misrepresents, or is misleading about evidence Plaintiff claims demonstrates Defendants were showed a picture of Relloque at the scene. (See ECF No. 39, pp. 17, 32, ECF No. 44, Exs. 18 and 40.) In Ms. Birdwell's audio interview, she could not recall when she shared Plaintiff's Facebook profile picture. (ECF No. 44, Ex. 18, 20:40-22:25.) In Sergeant Gradwahl's audio interview, he definitively states that he never saw Plaintiff's driver's license or any photos of Plaintiff while at the scene, and specifically that Ms. Birdwell did not ever show him any photos of Plaintiff. (ECF No. 44, Ex. 40, 55:23-56:01.) There is no evidence establishing any Defendants saw an image of Plaintiff while they were at the scene.

  The sole piece of evidence Plaintiff offers in a failed attempt to adduce evidence of discriminatory intent is a misinterpretation of the following excerpt from Ms. Birdwell's deposition: "[T]hey didn't want to go into the house and have to use excessive force, and they did mention that because of [...] the current like state of the police riots and all of that, like they

---

[3] Ms. Birdwell's single statement regarding information about Plaintiff's race was hazy at best and contradicted by her own prior recorded statements submitted by Plaintiff. (ECF No. 44, Ex. 18.) It was also concluded by an independent investigator that none of the individual defendants were aware Plaintiff was a minority while on the scene. (Nweze Decl., Ex. 10.)

Page 13 – **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
          **CIS LITIGATION**
          15875 Boones Ferry Rd., #1469
          Lake Oswego, OR 97035
          Telephone: (503) 763-3800

didn't want to have to do that." (ECF No. 43-19, p. 20.) While on its face, this statement clearly only relates to a concern regarding the potential for use of force, Plaintiff, without any evidence to support such an assertion, claims this was tantamount to "Defendants ma[king] clear that their decision not to render aid to Relloque was racially motivated and due to a discriminatory reason." (ECF No. 39, p. 32.) However, when later asked to clarify whether this statement was made in reference to Plaintiff's race, or him not being white, Ms. Birdwell definitively answered "no." (Nweze Decl., Ex. 2, pp. 61:25 – 62:5.) Further, Sergeant Gradwahl also explained that, though he does not recall this specific statement, to the extent it was made, his primary concern would only have related to the safety of those involved and wanting to avoid (if at all possible) instigating a use of force situation. (Gradwahl Decl., ¶¶ 6-11.) Simply put, there is no evidence in the record which supports Plaintiff's misguided interpretation of Ms. Birdwell's testimony. There is also undisputed evidence that the officers in this case did not harbor any racial animus towards Plaintiff, minorities, or Polynesian persons in general. (*Id*.; Goode Decl., ¶¶ 7-10; *see also* Nweze Decl. in Sup. of MSJ, Ex. 1, p. 2; Ex. 3; Ex. 5, p. 99:4-25; p. 100:8-17, p. 102:5-20, p. 110:13-25, p. 155:24 – p. 156:10; Ex. 6, p. 56:5-18; p. 52:18– p. 53:4, p. 53:14-25, p. 55:1 - 56:25; Ex. 7, p. 37:3-11; Ex. 8 (ECF No. 37).

Moreover, a single statement, regardless of how Plaintiff subjectively interprets it, as a matter of clearly established precedent is insufficient evidence to demonstrate discriminatory intent. *See Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754-55 (9th Cir. 2001) (affirming summary judgment against the plaintiffs because they produced insufficient evidence that the employer's decision to demote them was "racially motivated") (quoting *FDIC v. Henderson*, 940 F.2d 465, 473 (9th Cir. 1991)); *Nimer v. Broek*, 2024 U.S. App. LEXIS 12081, *6-7 (9th Cir. 2024) (use of a racial epithet during the encounter, without additional evidence of racial animus, is insufficient to create a genuine issue of fact that a defendant acted in part because of a plaintiff's protected characteristic; *see also Maynard v. City of San Jose*, 37 F.3d 1396, 1405 (9th Cir. 1994) (reversing jury's verdicts for the plaintiff because the evidence did not show that the retaliation against the plaintiff "occurred because [he] assisted a Black person,"

Page 14 – **REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**CIS LITIGATION**
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

but rather "suggest[ed] an alternative motive for the defendants' actions").

Despite Plaintiff having the burden to prove the unlawfulness was clearly established, and there being "no analogous burden on the § 1983 defendants to find factually on-point cases clearly establishing the lawfulness of an officer's action," *Hopson v. Alexander*, 71 F.4th 692, 708 (9th Cir. 2023), Plaintiff has failed to point to any clearly established law which would put the individual defendants in this case on notice that their conduct, in light of the facts and circumstances as they knew them, was unconstitutional.

For these reasons, and those articulated in Defendants' Motion for Summary Judgment (ECF No. 36), Defendants Officer Goode, Sergeant Gunnarson, and Sergeant Gradwahl are entitled to qualified immunity and all Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment "Equal Protection" claim and it should be dismissed with prejudice.

**B.      Plaintiff's State Tort Claims.**

   1.    <u>Third Claim for Relief: Negligence</u>.

As a threshold matter, Plaintiff's Response entirely fails to address why Oregon's "physical impact rule" does not create a complete barrier to recovery as to this claim. (See, generally, ECF No. 36.)  As clearly articulated in Defendants' Motion for Summary Judgement, Oregon precludes recovery for negligence claims where there has been no physical injury inflicted by defendant and no special relationship between the parties.  As Plaintiff has utterly failed to address this issue, they appear to concede it, as they should in light of clear precedent. In *Hammond v. Central Lane Communications Center*, 12 Or. 17, 816 P.2d 593 (1991), the court found that the wife of decedent, who died of a heart attack, could not recover against emergency telephone system operators based upon their delayed response to a 911 call decedent placed. *Id*. The Supreme Court later made clear: "[a]lthough the defendant may have contributed to the death by failing to respond quickly enough, the defendant did not cause the actual physical injury—the heart attack." *Philibert v. Kluser*, 360 Or. 698, 713.  Oregon District Court has reached the same conclusion – precluding claims where defendant has not directly physically

impacted plaintiff. *See Jane Doe v. Bill Wright, et al.*, No. 2:23-cv-00332-HL (D. Or. Oct. 16, 2023) at 35-36 ("alleged negligence is entirely premised on his purposeful and discriminatory omissions, and not any affirmative physical action he took with respect to Plaintiff. Accordingly, Plaintiff has failed to allege a physical injury"); *see also Andersen v. Atl. Recording Corp.*, 07-934-BR, 2010 WL 4791728, *6 (D. Or. Nov. 18, 2010) (plaintiff generally "must establish that she suffered a physical touching that resulted in emotional distress"). This precedent is directly applicable to the facts in this matter; accordingly, summary judgment should be granted in favor of Defendants on this claim.

To the extent any further arguments need be addressed, which Defendants do not believe is necessary, Plaintiff argues that Defendants can be held liable under common law negligence for injuries Plaintiff inflicted upon himself which, he alleges, were "caused by his intoxication" – which, undisputedly was an endeavor he pursued without any assistance or involvement from Defendants (smoking marijuana prior to meditating and ingesting mushroom tea much later in the evening – both on his own). Plaintiff states that two cases, *Ibach v. Jackson* and *Fulmer v. Timber Inn Rest. & Lounge, Inc.*, demonstrate that "Oregon have long held that knowingly "leaving [a Plaintiff] alone in a maimed, injured and intoxicated condition" can be the basis of liability." 148 Or 92 (1934), 330 Or 413 (2000), *superceded by statute on other grounds*. (ECF No. 39, p. 38.) However, Plaintiff fails to point out a necessary, and distinguishing, fact present in both these (and other cases which so hold) – the person "leaving" a plaintiff alone in such a condition is also the same person who provided/served/sold the substance which intoxicated the plaintiff (in both cases establishments overserved the plaintiffs with alcohol). These type of dram shop liability cases have no application to the facts in this case and should not be interpreted to stand for the very overbroad proposition Plaintiff makes. There is no precedent of which Defendants are aware of which has held that a defendant can be held liability for the injurious conduct of an individual (over whom they have no custody) who has become intoxicated without *any* involvement on the part of defendant.

Plaintiff also argues that the "self-inflicted nature of Relloque's injuries is not a barrier to

foreseeability." However, this statement misses the point, while the circumstances which give rise to self-inflicted injuries certainly can present a barrier to proving foreseeability (such as here, where the injuries were already sustained, there was no fire burning, and no one could reasonably predict that an individual would place themselves into a fireplace (for a second time)). The more pertinent question is can self-inflicted injuries serve as a barrier to *causation?* And the answer, in this case, is a definitive yes. Plaintiff must demonstrate that the Defendants' conduct was a "substantial factor in producing plaintiff's injury." *Simpson v. Sisters of Charity of Providence in Oregon*, 284 Or. 547, 555 (1978). In other words, "but for" the City's conduct, would Plaintiff have been injured. *Joshi v. Providence Health System of Oregon Corp.*, 198 Or. App. 535, 539 (2005), *aff'd*, 342 Or. 152 (2006). Under no reasonable interpretation of the undisputed evidence could Defendants been perceived as a "substantial factor" in producing Plaintiff's self-inflicted injuries (which were already sustained at the time they were dispatched to the 911 call). This is not merely a question of comparative fault – as Plaintiff is attempting to portray it – but a threshold question of whether Plaintiff has produced the requisite evidence that Defendants' conduct was the but-for cause of his self-inflicted injuries.

While Plaintiff spends considerable time arguing there is evidence of intentional conduct on the part of Defendants, Plaintiff offers no evidence that the choices that were made during the course of their response to the 911 call were done with anything less than intent. It is well established that intentional conduct does not give rise to a negligence claim (and vice versa). *See Kasnick v. Cooke*, 116 Or. App. 580, 842 P.2d 440 (1992) (the plaintiff may not allege facts that necessarily would constitute an intentional tort but then assert that he can prevail by proving only negligence); *see also Aranda v. City of McMinnville*, 942 F. Supp. 2d. 1096, 1110 (D. Or. 2013) (citing *Kasnick*, the court granted summary judgment on plaintiff's negligence claim against the city as plaintiff only alleged that the defendant committed intentional acts, not negligent conduct, and offered no legal argument or factual evidence to the contrary.). Plaintiff cannot have it both ways. The Defendants' conduct was either intentional, or it was negligent. The evidence clearly establishes that Defendants made intentional choices in terms of how to handle the response to

Page 17 –   **REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

CIS LITIGATION
15875 Boones Ferry Rd., #1469
Lake Oswego, OR 97035
Telephone: (503) 763-3800

the call, as discussed in detail *supra*, all of which were made in the interests of all parties' safety in mind, and for non-discriminatory reasons.

Given the complete dearth of evidence underlying Plaintiff's claim as well as precedent which precludes Plaintiff's claim as a matter of law, Defendants are entitled to summary judgment as a matter of law on all claims.

2. <u>Fourth Claim for Relief: Intentional Infliction of Emotional Distress</u>.

In arguing that his IIED claim should survive summary judgment, he argues he does not have to prove any "personal hostility" in terms of establishing intent, which Defendants do not dispute, but Plaintiff then fails to offer any evidence demonstrating that Defendants had the requisite intent – i.e. that they knew distress was certain, or substantially certain, to result from his conduct. Rather, Plaintiff appears only to argue that because they "sent away" Plaintiff roommate and paramedics (which as discussed supra is not something for which they can be held vicariously liable), that somehow demonstrates they intended Plaintiff to experience distress as a result. However, the only evidence in the record as to Defendants' intent is that, across the board, the individual officers wanted to avoid a situation where they may be compelled to use force and made the decision to walk away from the residence in the interest of safety for all involved. (See Gradwahl Decl., ¶¶ 6-11; Nweze Decl., Ex. 10, p. 4; Nweze Decl. in Sup of MSJ (Ex. 3, p. 2; Ex. 4, p. 2; Ex. 5, p. 94:21 – p. 95:21, p. 126:8 – 127:21, p. 128:19 – 130:22; Ex. 6, p. 95:4 – 97:11, p. 98:5-24, p. 100:18 – 103:10, p. 108:10 – p. 110:14; Ex. 7, p. 95:12 – 96:19; (ECF No. 37)).

Plaintiff goes on to argue that Defendants somehow owed Plaintiff a "greater obligation" given the relationship between the two. (ECF No. 39, p. 43.) However, Oregon precedent stands in opposition to Plaintiff's assertion. During the course of this call, Plaintiff was a member of the public[4], and law enforcement officials have "no special relationship to members of the public

---

[4] Plaintiff asserts the same – "the conduct … took place between on-duty police officers and a member of the public requesting aid." (ECF No. 39, p. 44.)

in general." *Buchler v. State By & Through Oregon Corr. Div.*, 316 Or. 499, 505–06 (1993) (declining to find that a correctional institution owed a duty to the public for the actions of prison escapees). Accordingly, within the context of this claim, there is no special relationship, nor heightened or fiduciary duty owed by Defendants to Plaintiff.

For all the reasons articulated supra, as well as those in Defendants' Motion for Summary Judgment, Plaintiff has failed to meet his burden on his IIED claim, and Defendants are entitled to summary judgment as a matter of law.

## CONCLUSION

For the reasons set forth above and for those reasons set forth in Defendants' Motion for Summary Judgment, Defendants respectfully request the Court enter an order granting summary judgment in its favor and against Plaintiff.

Respectfully submitted this 14th day of March 2025.

                CIS LITIGATION

By:   s/ *Lauren E. Nweze*
        Lauren E. Nweze, OSB No. 145218
        Of Attorneys for Defendants